## JOHN C. STEWART *et al.*

*v.*

## CINCINNATUS C. MUNFORD.

1. ESTOPPEL—*to claim property after inducing its purchase.* When a lessee of a mine surrenders his lease to the lessor to enable him to lease to another, who had agreed to buy the lessor's interest, but which he afterwards refused to do, and no new lease was ever executed to such lessee, and when the improvements were partly burned, the lessee said he was unable to take and work the mine, and requested the lessor to do the best he could with the property, and assisted in procuring another to take a lease of the property without informing him of his claim to the machinery included in the leasing, it was *held,* that the original lessee was estopped from claiming his improvements of the second lessee, or compensation therefor, in the absence of any agreement to pay for the same.

2. LEASE—*effect of surrender.* Where a lessee of a mine makes a written surrender of his lease in view of a contemplated sale of his improvements and machinery, to enable the lessor to make a new lease to the purchaser, the original lease, in law, if not in equity, is canceled, and the lessor reinvested with the legal title to the term, and, without any new writing to restore the term, the lessor may again lease and pass the legal title free from the claim of the first lessee.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. F. C. SMITH, for the appellants

Mr. F. S. MURPHY, and Mr. F. A. WILLOUGHBY, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that on the 16th of November, 1872, Munford, the appellee, leased, for the term of fifteen years, of S. G. Dean, a tract of land for mining purposes. Appellee entered under the lease, sunk a shaft, ran some entries, put in machinery and erected a building above ground at an expense, as he claims, of over $3000. He sold his lease, machinery, etc., to an agent of the Lathrop Coal and Mining Company, for $2000, of which $300 was paid in hand, and the papers were drawn, executed, and were to be delivered within ten days, but the Lathrop Coal and Mining Company repudiated the contract before the expiration of that time, on the ground that their agent had exceeded his authority.

When this sale was made to that company, the lease to Munford contained covenants to which its agent objected, and that the objection might be obviated, Munford surrendered his lease by written indorsement thereon to Dean, and a new lease was made to the company omitting the objectionable covenants.

Munford brought suit against the Lathrop Coal and Mining Company to recover the balance of the purchase money, but failed to recover. When the lease was executed to the company, Dean took possession, as appellee claims, under an arrangement between them that Dean should hold it and turn it over to the company if they should accept it, or if not, then to return it to him. After Dean took possession a fire occurred which destroyed the building and machinery.

Soon after this, Dean, who was claiming the mine, got Munford to see appellants and deliver to them a letter written by Dean, who had previously conversed with Stewart in reference to leasing the mine to him, and to induce Stewart to lease

the mine. It is claimed by Munford that Stewart in this conversation agreed that if he and McFarland should lease the property, they would pay him for his improvements what they were worth. It was soon afterwards discovered that Dean had no title to the property, but the title was in his wife, and on the 15th of July, 1873, appellants took a lease from Dean and his wife for the mine, and went into possession under it. The lease contains this clause: "Also the shaft already dug upon said premises, with the coal cars and everything else situated upon the following described premises." Munford, after he failed in his suit against the coal company, demanded the premises of appellants and they refused to surrender them, and thereupon he brought suit in equity against appellants and recovered a decree for $1700, which was reversed in this court on the ground that equity had no jurisdiction. He thereupon instituted this action of assumpsit. Appellants filed a plea of the general issue, and on a trial the jury found for plaintiff a verdict of $2500, but the court required a *remittitur* of $1300, which was made, and the court rendered judgment against defendants for $1200 and costs. The case is brought to this court on appeal.

On reading the evidence contained in this record, we find it impossible to concur in the conclusion reached by the jury. They, it seems to us, misapprehended the entire force and effect of the testimony. It stands admitted that appellee, when it was supposed that a sale was made to the coal company, made a formal written surrender of his lease to Dean. This is not only not disputed, but is conceded. This, then, vested the legal title to the term, if any existed, in Dean, whatever may have been the purpose or understanding of the parties. Nor is there the slightest pretence that any writing was ever afterwards executed to revive or restore the term in appellee. By the written surrender, the lease, in law, if not in equity, was canceled, and all of appellee's legal rights were terminated. And as a verbal lease for a term of more than one year would have been void under the Statute of Frauds, any verbal agree-

ment at the time of the written surrender or afterwards, being void, failed to vest any legal title in appellee. If he had any rights they were equitable.

When, therefore, the property was destroyed by fire, and appellee said to Dean that he was wholly unable to repair and could not go on under the lease, and that Dean should do the best he could, that was a surrender of all equitable claim to the lease or the premises. If he could reserve an equitable interest in the lease by a verbal agreement, it must follow that by the same character of contract he could surrender that interest. It could not require a higher degree of evidence to surrender and cancel than to create the interest. This must be obvious to all persons in the profession.

Then, did he so surrender the interest which he claims he reserved by verbal agreement with Dean? Of this we think there can be no question. He admits that he said to Dean he was unable to repair or perform the requirements of the lease after the fire, but says he does not remember saying to Dean to do the best he could with the property. But Dean swears he did, and is corroborated by his son and by Curry. The latter says, appellee said in his presence and a number of others, after the fire, that he had surrendered the lease to Dean. We must, therefore, conclude that he did surrender it in the manner Dean swears he did. This is more probable from the fact that he was then looking to the Lathrop Coal and Mining Company for pay for his improvements. Dean's son testifies that appellee said to his father, he was unable to repair and go on under the lease, and would prefer to look to the company. He was then pressing his suit against the company, and it is unreasonable to believe that he would then, or at the time Dean leased to appellants, make claim to property he claimed to have sold to the company and for which he was endeavoring to recover the price. He could not be presumed to make such a claim, which, if proved, in the suit with the company, would have inevitably defeated a recovery. Such a claim would have been fatal to his interests in that case.

The property, it is conceded, belonged to the wife of Dean. That being true, it may be seriously doubted whether appellee acquired any legal rights by the lease to him. There does not appear from the transcript, so far as we have been able to find, any evidence that in making the lease Dean was acting by authority of his wife, or that she in anywise recognized his authority or ratified the act. But we shall pass this question, as the point is not made or discussed in argument.

The evidence is, we think, overwhelming, that appellee, in his first interview in reference to appellants leasing from Dean, and his next, on the day and before the lease was signed, or on that of the day after, made any claim of ownership or claim for the property or improvements. Appellee does say, in direct examination, that Stewart said he ought to be paid for his improvements if he failed to recover of the coal company, and it was agreed he should be paid what they were worth. But in his cross-examination he says he made no claim therefor. How is it possible to believe appellants, without any claim, would agree to pay so large a sum? It is too improbable for belief. And it could not be that he would make such a claim and thereby endanger a recovery from the coal company. Both of appellants swear unequivocally that he did not make such claim, nor does he swear that he did. They both positively deny they ever promised to pay him. From the evidence we are abundantly satisfied that he made no such claim before the lease was executed, nor until after he had failed in his suit against the Lathrop Coal and Mining Company, or that appellants promised to pay him anything.

If, as it appears, he made no such claim and they did not promise to pay him before they leased the property, it would be monstrous injustice to permit him to recover when he urged them on to take the lease, supposing, as the lease said, they were obtaining the shaft, coal cars and everything else on the premises. The law is not subject to the reproach that a man may withhold such information when he is apprised of the intention of parties to so act, and he urges them to do so,

and still recover for what he knows they supposed they were purchasing and were getting with an unincumbered title. Common honesty required him to assert his title or to be forever estopped from asserting his claim.

We are clearly of opinion that appellee has failed to establish any ground for a recovery.

The judgment of the court below must be reversed.

*Judgment reversed.*